EDGARDO P. AGUSTIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Agustin v. Commissioner
Docket No. 20821-90
United States Tax Court
T.C. Memo 1992-167; 1992 Tax Ct. Memo LEXIS 178; 63 T.C.M. (CCH) 2477; March 23, 1992, Filed *178 P was arrested and incarcerated on July 12, 1985. P was committed to Metropolitan Correctional Center, San Diego (M.C.C. San Diego), from Aug. 5, 1985, until Mar. 24, 1987. From Mar. 24, 1987, through Apr. 22, 1987, P was in transit in custody of the U.S. Marshals Service. On Apr. 22, 1987, P arrived at his new location at Danbury, Connecticut. Since the time of his arrest and incarceration, P did not give notice to R of a change of address. However, R was aware in Feb. 1987 that P was incarcerated at M.C.C. San Diego. On Apr. 9, 1987, R sent duplicate notices of deficiency to P at P's address in New York, where he resided prior to his incarceration, and to M.C.C. San Diego. P filed an untimely petition with this Court. P and R filed cross-motions to dismiss for lack of jurisdiction. Held: R mailed a notice of deficiency to P's "last known address" within the meaning of sec. 6213(b) and since a timely petition was not filed, R's motion to dismiss will be granted. Held further: P's motion to dismiss for lack of jurisdiction will be denied. Robert Hermann, for petitioner. Peggy Gartenbaum, for respondent. DAWSON
DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION
*179 DAWSON, Judge: This case was heard by Special Trial Judge Peter J. Panuthos pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the Special Trial Judge's opinion, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PANUTHOS, Special Trial Judge: This case is before the Court on the parties' cross-motions to dismiss for lack of jurisdiction. There being no question that the petition was not timely filed, the only issue in dispute is whether the notice of deficiency was mailed to petitioner at his "last known address" within the meaning of section 6212(b). Respondent determined deficiencies in and additions to petitioner's Federal income taxes as follows: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6653(b)(1)
6653(b)(2)
6661(a)
6654(a)
1981
$ 117,028
[1] $ 58,514
--          --  -- 1982
51,086
25,543
50% of the inter- $ 12,772
$ 4,973
est due on $ 51,086
1983
45,899
22,950
50% of the inter- 11,475
2,811
est due on $ 45,899
1984
21,461
10,731
50% of the inter- 5,365
1,351
est due on $ 21,461
*180 The notice of deficiency dated April 9, 1987, indicated that respondent had made a jeopardy assessment of the deficiencies and additions to tax pursuant to section 6861(a). We note at the outset that the parties filed a stipulation of facts containing only two numbered paragraphs and no exhibits. At the hearing the Court suggested that one of the purposes of setting this matter for hearing was to provide the parties an opportunity to submit evidence relating to the cross-motions to dismiss. Counsel stated that they understood that the scheduled hearing was not for the purpose of receiving evidence. The Court informed counsel that the parties were expected to make a record in this case so as to provide it with a basis to make findings. The parties did not present any witnesses. At the conclusion of the hearing the Court suggested to counsel that they should consider filing a supplemental stipulation of facts. The Court also indicated *181 that if either counsel believed that his case had been prejudiced based on an erroneous belief that he would not be permitted to present evidence, he could file an appropriate motion after the hearing. Neither party filed a motion seeking an opportunity to submit further evidence. The parties did subsequently file a second stipulation of facts containing two numbered paragraphs and two exhibits. Because of the limited stipulated facts and otherwise limited record, fact finding was made difficult. Nevertheless, the Court reviewed the allegations made by the parties in their respective motions, responses thereto, and memoranda in an attempt to make findings which appear to not be in dispute. To the extent there are disputed facts and the record is void of any evidence, the Court has no choice but to find against the party who has the burden of proof. FINDINGS OF FACT At the time of filing the petition herein, petitioner resided at the Federal Correctional Facility, Morgantown, West Virginia. Prior to July 12, 1985, petitioner resided at 183-27 Dalny Road, Jamaica, New York (New York address). On July 12, 1985, petitioner was arrested on Federal criminal charges stemming from *182 an investigation involving more than one Federal agency. [2] Subsequent to his arrest, petitioner was indicted on various Federal charges including theft and smuggling of arms from the United States to Iran. On August 5, 1985, petitioner was committed to the Metropolitan Correctional Center, San Diego, California (M.C.C. San Diego). M.C.C. San Diego is not a correctional facility to which persons convicted of crimes are assigned long-term; it is a facility where individuals are held pending disposition of Federal criminal charges against them. Since the date of his arrest, petitioner continuously has been in custody of and incarcerated in various Federal prison facilities. On July 12, 1986, petitioner pleaded guilty to certain charges against him. In November 1986, petitioner moved to withdraw his guilty plea and on February 9, 1987, the United States District Court for the Southern District of California denied petitioner's *183 motion. He was then sentenced to a term of 18 years' imprisonment based on his guilty plea. On February 18, 1987, the Internal Revenue Service (IRS), pursuant to section 6861, made a jeopardy assessment of income taxes against petitioner for 1981 through 1984 in the total amount of $ 557,138. A notice of jeopardy assessment, a demand for payment, and a notice of intention to levy was hand-delivered by a representative of the IRS to petitioner at M.C.C. San Diego on February 19, 1987. Soon after the notice of jeopardy assessment was served on him, petitioner contacted a family friend, Antonio Flores (Flores), who is an attorney, to assist him with IRS matters. On March 24, 1987, petitioner was discharged from M.C.C. San Diego and placed in the custody of the U.S. Marshals Service. Petitioner was thereafter transferred to several Federal correctional facilities and was committed to the Federal prison at Danbury, Connecticut, on April 22, 1987. During the period between March 24, 1987, and April 22, 1987, petitioner was not advised of his destination nor was he permitted to have access to papers or other materials relating to IRS matters. [3]
*184 On April 9, 1987, the IRS mailed duplicate original notices of deficiency to petitioner as follows: Edgardo Agustin 81821 aka: Edgardo P. Agustin 81821 aka: Edgardo Pangilinnan Agustin 81821 aka: Pangilinnan Agustin 81821 183-27 Dalny Road Jamaica, NY 11432 Edgardo Agustin 81821 aka: Edgardo P. Agustin 81821 aka: Edgardo Pangilinnan Agustin 81821 aka: Pangilinnan Agustin 81821 Metropolitan Correctional Center 808 Union Street San Diego, CA 92101 The petition was filed with the Court on September 17, 1990, which date is more than 3 years after the mailing of the notice of deficiency. Each duplicate notice of deficiency listed petitioner's prisoner number as 81821. Petitioner's correct Bureau of Prison I.D. number is 31420-053. The number utilized by respondent in the notice of deficiency was the number originally assigned to petitioner when he was arrested. The record is void of any evidence reflecting a return receipt from the U. S. Postal Service indicating that either of the duplicate notices of deficiency was delivered. There is also no evidence indicating that either of the duplicate notices of deficiency was returned to the IRS as undelivered. In April *185 1987, petitioner's two daughters were the only persons residing at the New York address. Prior to June 19, 1987, petitioner owned the house at the New York address. On June 19, 1987, petitioner transferred the house at Dalny Road to his daughter, Grace Agustin. Shortly after September 1988, petitioner, through his counsel, Flores and Mitchel B. Dubick, made efforts to obtain administrative relief from the IRS. However, petitioner did not seek review of the jeopardy assessment pursuant to section 7429. The most recently filed Federal income tax return prior to issuance of the notice of deficiency was for taxable year 1981. That return showed the New York address. [4] Prior to mailing the February 18, 1987, notice of jeopardy assessment and the April 9, 1987, notice of deficiency, respondent prepared 1982 through 1984 returns for petitioner reflecting the M.C.C. San Diego address. Petitioner did not give the IRS notice of a change of address during the period of his incarceration. It is the policy of M.C.C. San Diego to forward mail to transferred inmates. At the time the notice of deficiency was mailed, respondent was aware that petitioner was incarcerated. *186 OPINION It is well settled that to maintain an action in this Court there must be a valid notice of deficiency and a timely filed petition. ; ; . The petition was filed more than 3 years after issuance of the notice of deficiency. Thus, there is no question that the petition is untimely and we must dismiss this case. If we find that a valid notice of deficiency was issued to petitioner, the dismissal will be against petitioner; however, if we find that a valid notice of deficiency was not issued to petitioner, the dismissal will be against respondent. , affd. without published opinion . Section 6212(a) and (b) sets forth the requirements for the issuance of a notice of deficiency. We have held that actual receipt of a notice of deficiency is immaterial if the notice was mailed to the taxpayer's last known address. , *187 affg. on other grounds ; ; . The phrase "last known address" is not defined by the Code or regulations. In , we held that a taxpayer's last known address is the address shown on his most recently filed return, absent clear and concise notice of a change of address. The burden of proving that the notice of deficiency was not sent to the taxpayer's last known address is on the taxpayer. . A taxpayer's last known address is the address which in light of the circumstances respondent reasonably believes is the address to which the taxpayer wishes respondent to use in sending mail to him. ; ; . Respondent must use reasonable diligence in determining a taxpayer's last known address. . *188 When respondent becomes aware that the taxpayer has established a different residence, the notice of deficiency must be sent to that address. ; . In , we distinguished between a temporary and permanent address of an incarcerated taxpayer. We stated as follows: A temporary address may, under certain circumstances, be the taxpayer's last known address if it is an address of definite duration to which the taxpayer has directed respondent to send all communications during such period. ; . Any direction by the taxpayer to use a temporary address must indicate the duration of the period during which the temporary address is to be used. . It is unreasonable for respondent to use a temporary address without a clear expression of intent by the taxpayer that the temporary address should be used in lieu of other *189 addresses. . Where the taxpayer is incarcerated his last known address may be the place of incarceration. ; . However, where the taxpayer's incarceration is or may be temporary in duration, the place of incarceration is not normally treated as the taxpayer's last known address. . See also ; . In Cohen the Ninth Circuit concluded that respondent's use of the last known address of the taxpayer's spouse for years in which the taxpayer had filed separate returns appropriate where the taxpayer was in the Los Angeles City Jail pending an appeal and a petition for admission to bail. The Court emphasized that: * * * The Commissioner or one of his agents may also learn that the taxpayer is temporarily sojourning elsewhere * * * while still retaining the same "permanent" address. *190 He is not required to treat the address of temporary sojourn as the "last known address". To so require would place an impossible administrative burden on the Commissioner. More important, it could in many cases defeat the objective of the statute by making it less rather than more likely that a letter mailed to the taxpayer would be received. * * *. [.]
However, where respondent has no knowledge of a permanent address or temporary address of a definite duration the place of temporary incarceration may be the only address which respondent could reasonably use. . [Fn. ref. omitted.]
Petitioner owned the New York property and resided at that address prior to his incarceration. After his arrest in July 1985, petitioner was held in various Federal prison facilities. Representatives of the IRS hand-delivered a notice of jeopardy assessment to petitioner at M.C.C. San Diego on February 19, 1987. Thus, there is no doubt that respondent was aware on April 9, 1987 (the date the notice of deficiency was mailed), that petitioner was not residing *191 at the New York address. Petitioner appears to agree that M.C.C. San Diego was a temporary address. [5] Respondent does not have the duty of determining whether a taxpayer is still at some temporary address of uncertain duration. ; ; . Nor is there anything in this record indicating that petitioner gave notice to respondent that he wished correspondence to be sent to his place of incarceration. See . The taxpayer's direction as to the address where he would like to receive mail is a crucial factor in determining whether a notice should be sent to a temporary address. See . Respondent *192 has proved that the petition is untimely. Accordingly, it is up to petitioner to come forward with evidence that the notice of deficiency was not sent to his last known address. While petitioner has established that respondent was aware that he was at M.C.C. San Diego, petitioner has not established that respondent knew or should have known that petitioner was no longer residing at M.C.C. San Diego (the temporary address) when the notice of deficiency was issued. IRS representatives had personal contact with petitioner at M.C.C. San Diego approximately 50 days prior to the mailing of the notice of deficiency. Assuming that respondent was aware, or should have been aware, that this was a facility where prisoners were only temporarily maintained, there is no evidence that respondent was aware that petitioner was in transit as of April 9, 1987. Petitioner argues that he could not have given clear and concise notice of a new address since he did not have control over his own movements, especially while he was in transit from one Federal prison facility to another. Petitioner also argues that since IRS representatives were in communication with representatives of the Department of *193 Justice relating to petitioner's prosecution and incarceration, respondent could have easily determined petitioner's address immediately prior to mailing the notice of deficiency. Petitioner's argument assumes facts and reaches conclusions which are not supported by this record. The extent of communication, if any, between IRS representatives and representatives from the Department of Justice is not clear. There is no evidence in this record that the IRS was involved in the investigation and ultimate arrest or conviction of petitioner. There is no evidence that petitioner was indicted or convicted for tax-related crimes. Cf. We do not assume that respondent knew or should have known that petitioner was being moved from M.C.C. San Diego to another facility at the time the notice of deficiency was mailed. [6]
Thus, by mailing *194 duplicate original notices of deficiency to petitioner at (1) the New York address (the house petitioner owned at the time, lived at prior to his incarceration, and where members of his family still resided), and (2) M.C.C. San Diego (where petitioner had been incarcerated since August 5, 1985), respondent satisfied her legal obligation. Due diligence does not require respondent to send agents to search out a taxpayer who is no longer at a temporary address. ; We also consider the effect of the incorrect prisoner I.D. number utilized by respondent in the notices of deficiency. There is no evidence in the record that petitioner provided any prisoner I.D. number to respondent. The I.D. number was apparently assigned to petitioner upon his arrest. Since no other I.D. number was provided to respondent by petitioner as a means of directing mail to him, petitioner should not now be able to complain that respondent used the incorrect I.D. number. Furthermore, there is no evidence in the record that the prisoner I.D. number is an element essential to delivery *195 of the notice to petitioner. [7] We have held that inconsequential errors in addressing a notice of deficiency do not destroy its validity. , affd. ; Finally, we note that even if petitioner, as he claims, did not have actual knowledge of the jeopardy assessment and the notice of deficiency until September 1988, when his attorneys sought administrative relief from the IRS with respect to the jeopardy assessment, petitioner waited 2 years (September 17, 1990) before he filed his petition with this Court. Cf. . Based on the foregoing, we hold that the notice of deficiency was mailed to petitioner's last known address. Accordingly, respondent's motion *196 to dismiss for lack of jurisdiction will be granted and petitioner's motion to dismiss for lack of jurisdiction will be denied. An appropriate order will be entered. Footnotes
1. All section references are to the Internal Revenue Code in effect for the tax years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. For 1981, the addition to tax for fraud is codified under section 6653(b).↩
2. The record is not clear whether the Internal Revenue Service was involved in the investigation.↩
3. Petitioner was again transferred in May 1989, to Loretto, Pa., and in June 1990, to Morgantown, W. Va.↩
4. The record does not reflect the date the return was filed.↩
5. It is petitioner who argues that M.C.C. San Diego was a facility where prisoners are temporarily held.↩
6. We note that respondent, however, was required to issue a notice of deficiency within 60 days from Feb. 18, 1987, under sec. 6861(b).↩
7. There is no evidence in this record that the notice sent to petitioner at M.C.C. San Diego was returned as undeliverable.↩